## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIANNE MEDZADOURIAN<br>331 POWAHATTON AVENUE<br>ESSINGTON, PA 19029, | : | CIVIL ACTION<br>NO.: |
| | : | |
| Plaintiff, | : | TRIAL BY JURY DEMANDED |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY<br>55 EAST COURT STREET<br>DOYLESTOWN, PA 18901, | : | |
| | : | |
| PRIMECARE MEDICAL, INC.<br>3940 LOCUST LANE<br>HARRISBURG, PA 17109, | : | |
| | : | |
| JOHN DOE MEDICAL PROVIDERS<br>3940 LOCUST LANE<br>HARRISBURG, PA 17109, | : | |
| | : | |
| & | : | |
| | : | |
| JOHN DOE CORRECTIONS OFFICER<br>55 EAST COURT STREET<br>DOYLESTOWN, PA 18901, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, Marianne Medzadourian, by and through her attorney Brian Zeiger, Esq.,

hereby alleges the following:

## PARTIES

1.    Plaintiff is an adult individual who currently resides at 331 Powahatton Avenue, Essington,

PA 19029.

1

2.      Defendant Bucks County is a municipality that owns, operates, controls and promulgates policies governing the Bucks County Prison System, with a principle business address of 55 East Court Street, Doylestown, PA 18901.

3.      Defendant Bucks County owns and operates a correctional facility located at 1730 S. Easton Rd, Doylestown, PA 18901.

4.      Defendant PrimeCare Medical, Inc. (hereinafter "PrimeCare") contractually provides medical treatment for inmates at the Bucks County Prison, with a primary business address of 3940 Locust Lane, Harrisburg, PA 17109.

5.      Defendants John Does Medical Providers, are sued both in their individual and official capacities and are employees of Defendant PrimeCare Medical.

6.      Defendants John Does Corrections Officers, are sued both in their individual and official capacities and are employees of Defendant Bucks County.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. § 1983.

8.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343.

9.      Venue is proper pursuant to 28 U.S.C. § 1391 as all actions giving rise to this Complaint occurred in this district.

## FACTUAL BACKGROUND

1.      On or about August 24, 2018, Plaintiff was an inmate at Bucks County Correctional Facility (hereinafter "BCCF").

2.      On August 24, 2018, a corrections officer transported Plaintiff to Doylestown for a court hearing.

2

3.       Plaintiff was 5'4" tall and weighed approximately 300 lbs. at that time.

4.       After the conclusion of the court hearing, a corrections officer or sheriff escorted Plaintiff to a lower-level holding facility at the Bucks County courthouse.

5.       A corrections officer or sheriff cuffed and shackled Plaintiff in the front of her body.

6.       A corrections officer attempted to place Plaintiff into a transport vehicle.

7.       A corrections officer began placing Plaintiff into the transport vehicle when he lost his grip on Plaintiff.

8.       Due to manner in which Plaintiff was shackled and cuffed, and due to Plaintiff's height and weight, Plaintiff was unable to get her leg up high enough to enter the transport vehicle.

9.       Plaintiff immediately fell to her shins and her right shoulder hit the door.

10.       As a result of the fall, Plaintiff immediately experienced pain in her back, neck, and shoulder.

11.       Plaintiff was unable to get off the ground.

12.       The corrections officer had to physically help Plaintiff from the ground.

13.       Plaintiff immediately alerted the corrections officer about the injuries to her body and the immediate pain in her neck, back, and shoulders.

14.       Upon returning to BCCF, Plaintiff complained about her injuries.

15.       Plaintiff was required to be "cleared" to re-enter the prison.

16.       Plaintiff spoke with a supervisor at BCCF regarding her injuries and complained about the injuries to her back, neck and shoulder, and complained about the pain in her back, neck and shoulders.

17.       Despite Plaintiff's complaints to staff about her injuries, the corrections officers did not

3

take any steps to obtain immediate medical evaluation and treatment of Plaintiff's injuries.

18.     Instead, Plaintiff was simply returned to her cell.

19.     Plaintiff filed numerous grievances and requests for medical care related to the injuries she sustained as a result of the incident as stated *supra*.

20.     Plaintiff was unable to fully move about after the fall.

21.     Plaintiff informed prison staff that she was unable to move.

22.     Still, corrections officers took no actions and made no referral or medical; or, in the alternative, staff at the BCCF medical center took no action to provide Plaintiff with treatment.

23.     For the next eight days following the fall, Plaintiff was constrained to her cell for almost 24 hours a day.

24.     Plaintiff was not given appropriate medical care for her injuries.

25.     Plaintiff continued to grieve about her injuries and limited mobility.

26.     Plaintiff requested medical attention in regard to her injuries and limited mobility, but again the staff at the BCCF took no actions to provide any medical treatment to Plaintiff.

27.     Approximately two weeks after the incident, Plaintiff's right hand locked—she could no longer move her hand or fingers and had no feeling in her hand.

28.     Both of Plaintiff's hands became numb and began to tingle.

29.     Plaintiff again complained to staff at the BCCF that her hands and fingers were numb and tingling.

30.     Plaintiff was given x-rays, but was not properly diagnosed.

31.     Approximately 3 weeks after the incident, the right side of Plaintiff's body became completely numb.

4

32.     Plaintiff again complained to the staff at the BCCF that the right side of her body was completely numb, and again she was not given any medical treatment.

33.     On October 10, 2018, Plaintiff awoke with a stiff neck and sent another slip to medical for help.

34.     Plaintiff again complained to the staff at the BCCF that she had a stiff neck, and again she was not given any medical treatment.

35.     On October 11, 2018, Plaintiff had numbness and tingling in her hands, feet, and legs.

36.     Plaintiff again complained to the staff at the BCCF that the she had numbness and tingling in her hands, feet, and legs, and again she was not given any medical treatment.

37.     On October 12, 2018, Plaintiff had no feeling in her legs and stomach and was wheelchair bound.

38.     Plaintiff again complained to the staff at the BCCF that the she had no feeling in hers legs and stomach, and again she was not given any medical treatment other than being placed in a wheel chair.

39.     On October 13, 2018, Plaintiff was paralyzed from her armpits down.

40.     On October 13, 2018, Plaintiff was transported from Bucks County Prison to Doylestown Hospital.

41.     Despite Plaintiff's numerous and repeated complaints of back, neck and shoulder pain, and numbness and tingling through her body and extremities since the August 24, 2018 incident, this was the first time that any type of medical specialist evaluated Plaintiff.

42.     In the emergency department of Doylestown Hospital, Stephen J. Gazak, MD, immediately ordered Plaintiff undergo an emergency cervical spine MRI.

5

43.     The MRI revealed at the C5-C6 level, "a large posterior central disc herniation which compresses the cord" to such a great extent that Plaintiffs spinal canal was only 2 mm in diameter at this level.

44.     On the same date, October 13, 2018, Plaintiff was transported from Doylestown Hospital to Thomas Jefferson Hospital in order to undergo emergency spinal surgery due to the severe spinal cord compression.

45.     On October 14, 2018, Plaintiff underwent a C5-C6 discectomy and anterior cervical spinal fusion.

46.     On October 22, 2018, Plaintiff was discharged and returned to BCCF.

47.     BCCF refused to allow Plaintiff to stay at Jefferson Hospital to receive rehabilitation or physical therapy.

48.     BCCF refused to provide Plaintiff any rehabilitation or physical therapy at BCCF.

49.     However, once a week, Plaintiff was transported to Doylestown hospital for Physical therapy, for approximately five visits.

50.     After the October 14, 2018 surgery, while still at BCCF, Plaintiff began to suffer from chest pains.

51.     Plaintiff grieved and filed medical slips related to chest pains.

52.     Plaintiff was never treated for any complaints of chest pains by BCCF.

53.     On February 28, 2019, Plaintiff was released from BCCF custody.

54.     Plaintiff continued to experience chest pains.

55.     Only after her release from BCCF was Plaintiff able to seek medical treatment on her own regarding her chest pain.

6

56.    At that time, Plaintiff was diagnosed with atrial fibrillation.

57.    Plaintiff continues treatment for atrial fibrillation.

58.    Upon information and belief, defendants' custom and practice is to provide the minimum amount of medical care and treatment to inmates at the BCCF.

59.    Upon information and belief, defendants have a custom or policy to fail to properly review complaints, grievances, and transfer paperwork to ensure inmate get proper medical care and treatment.

60.    Upon information and belief, the failure to properly review complaints, grievances, and transfer paperwork, show the Defendants are deliberately indifferent, condone and ratify behavior, or adopt an unofficial policy, of not providing proper medical care to inmates at the BCCF.

61.    In the alternative, if paperwork and records are not being created in regards to complaints, grievances and transfers, there exists a custom or policy of not properly documenting complaints, grievances and transfers, again showing a custom or policy of not providing proper medical care to inmates at the BCCF.

## COUNT I:
## FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C § 1983
## DENIAL OF MEDICAL CARE
## PLAINTIFF V. ALL DEFENDANTS

62.    Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

63.    Ms. Medzadourian was suffering from a severe cervical spinal cord compression caused by a C5-C6 disc herniation.

7

64.    At the time of her detention, employees (John Does) of both Defendant Bucks County and Defendant PrimeCare Medical knew or should have been aware of Ms. Medzadourian's medical conditions.

65.    Ms. Medzadourian repeatedly informed corrections officers and health care providers of her conditions and that she needed treatment.

66.    On several occasions, Defendants failed to provide Ms. Medzadourian with adequate care as evidenced by the factual allegations *supra*.

67.    As a direct and proximate cause of Defendants' actions, or lack of actions, Ms. Medzadourian suffered substantial physical injuries including a sever back injury and a heart condition.

WHEREFORE, Plaintiff claims of the individually named Defendants, jointly and severally, a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT II:
## MONELL CLAIM UNDER 42 U.S.C. § 1983
## PLAINTIFF V. DEFENDANTS BUCKS COUNTY & PRIMECARE

68.    Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

69.    Defendants Bucks County and PrimeCare established, knew of, and acquiesced to policies, procedures, and customs that Defendants Bucks County and PrimeCare knew or should have known would lead to violations of citizens' constitutional rights.

70.    Defendants Bucks County and PrimeCare acted with deliberate indifference to the

8

consequences when establishing and enforcing inadequate policies, procedures, and customs.

71.     Defendants Bucks County and PrimeCare knew or should have known that its employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff, and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice and therefore acquiesced in, and were deliberately indifferent to, the aforementioned unconstitutional conduct and policy.

72.     By failing to take action to stop or limit the policy and/or custom and/or practice by remaining deliberately indifferent to the systematic abuse which occurred in accordance with and as a direct and proximate result of the policy, Defendants Bucks County and PrimeCare condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

73.     The conduct of Defendants Bucks County and PrimeCare and/or the conduct of defendants' employees or agents, and/or policy maker for the Bucks County Prison Systems were a factual cause of and/or the cause of the harm and damages sustained by Plaintiff.

WHEREFORE, Plaintiff demands judgment for compensatory damages against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Hundred and Fifty Thousand ($150,000) Dollars, together with delay damages, interest, costs, attorneys' fees, and declaratory and injunctive relief.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

RESPECTFULLY SUBMITTED,

October 10, 2019
DATE

BRIAN ZEIGER, ESQ.
IDENTIFICATION NO.: 87063
LEVIN & ZEIGER, LLP
TWO PENN CENTER
1500 JFK BLVD STE 620
PHILADELPHIA, PA 19102
215.546.0340
zeiger@levinzeiger.com

10